IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 2, 2015


**OMAR ALEJANDRO GARCIA v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-441      Steve R. Dozier, Judge**

_____

**No. M2014-02126-CCA-R3-PC – Filed August 14, 2015**
_____

Omar Alejandro Garcia ("the Petitioner") filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Sunny Eaton, Nashville, Tennessee, for the appellant, Omar Alejandro Garcia.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**
**Factual and Procedural Background**

*Guilty Plea Proceedings*

The Davidson County Grand Jury indicted the Petitioner with two counts of aggravated robbery and one count of possession of a firearm during the commission of a dangerous offense.[1] The Petitioner pleaded guilty to both counts of aggravated robbery.

---

[1] It is not clear from the record whether or not the possession of a firearm during the commission of a dangerous offense charge was dismissed as part of the Petitioner's plea agreement.

Pursuant to a plea agreement, the Petitioner was sentenced to two terms of twenty years' incarceration to be served concurrently.

During the plea colloquy, the trial court explained that the Petitioner was charged with two counts of aggravated robbery, which carried a potential sentence of eight to thirty years each. The Petitioner affirmed that he understood the charges against him and their respective ranges of punishment. The Petitioner also affirmed that he had spoken with his trial counsel about the charges and sentencing ranges.

The trial court informed the Petitioner of his rights to a trial by jury, to have representation during a trial, to be present at the trial, to cross-examine witnesses, to maintain his innocence, to call his own witnesses, to remain silent, and to appeal. The Petitioner affirmed that he understood these rights and that he knowingly and voluntarily gave them up in exchange for the plea agreement. The Petitioner denied being forced, threatened, coerced, intimidated, or pressured into accepting the plea agreement. He also stated that he was not under the influence of drugs or alcohol and that he understood his felony convictions could be used against him to enhance any future sentence.

The State made the following offer of proof:

[O]n December 3rd, 2011[,] at approximately 10 o'clock in the evening [,] metro police responded to a robbery call at Murfreesboro Pike at an apartment complex. Elmar Castro, the victim who is present today here in court, was sitting beside the apartment complex pool down loading music on his computer using the apartment wifi. While he was there, a vehicle approached and three of these individuals jumped out of the vehicle, came up to him brandishing guns and robbed him of his computer and a gym bag that was used to carry the computer. Mr. Castro was able to describe the vehicle to metro police. He described it as a red vehicle with a loud muffler and a partial tag number of 893. The men that robbed Mr. Castro were wearing bandanas around their faces.

Within [forty] minutes of Mr. Castro being robbed, another robbery occurred at a different apartment complex on Linbar Drive. Mr. Raphael Martinez, the second victim who is also present here in court today, had returned home from eating dinner after work. He parked his work vehicle and as he exited his vehicle, he was approached again by three individuals brandishing guns. Specifically Mr. Martinez described a revolver and a semiautomatic gun. Mr. Martinez was robbed of [the] contents of his wallet, cash, [and] a gold ring that had a blue stone in it.

The individuals ran away and jumped into a red vehicle that matched the same description that had been given [by] Mr. Castro. The individuals that robbed Mr. Martinez were wearing bandanas though the bandana slipped on one of the defendants' faces, that would be [the Petitioner], and Mr. Martinez was able to view enough of his face to identify him later at a show[-up identification].

Officers were in the area responding to the robbery of Mr. Castro, and observed the vehicle near the area of Tampa Drive. Officers pulled in behind the vehicle when it stopped at the residence [] of the remaining co-defendant Marcelo Amelo. Metro officers took the occupants of the red vehicle with the 893 license tag number into custody. They were found to be in possession of Mr. Martinez's social security card, a credit card, Martinez's contractors [sic] license, Mr. Martinez's class ring, as well as Mr. Castro's computer, and the bag that contained the computer. Also found inside the vehicle were bandanas and two weapons that matched the description previously given by Mr. Martinez, there was a revolver and there was a semiautomatic gun. [] [The Petitioner] was [in] the front seat passenger and underneath him was the semiautomatic gun. He also made an admission in his statement to police about the weapon as well.

Before entering his plea, the Petitioner confirmed his satisfaction with the representation of trial counsel. After accepting the Petitioner's plea, the trial court sentenced the Petitioner, as a multiple offender, to two, concurrent terms of twenty years' incarceration.

### *Post-Conviction Proceedings*

The Petitioner filed a timely petition for post-conviction relief, claiming he received ineffective assistance of counsel when trial counsel failed to: (1) familiarize himself with Tennessee sentencing law, particularly the July 2010 amendment to Tennessee Code Annotated section 40-35-108(b); (2) contact the Petitioner's attorney that represented him during his juvenile adjudications; (3) contact the arresting officer in the Petitioner's juvenile adjudications; (4) request the recording from the Petitioner's juvenile adjudications; and (5) file a motion contesting the State's intent to seek to classify the Petitioner as a career offender based on his juvenile adjudications. Additionally, the Petitioner asserted his guilty plea was involuntary and unknowing.

At the post-conviction hearing, the Petitioner testified that he spoke and understood English, was able to converse with trial counsel, and understood his conversations with trial counsel. The Petitioner stated that his convictions for two counts

of aggravated robbery were his first felonies as an adult. The Petitioner said from the time he was indicted to the time he entered the guilty plea, trial counsel visited the Petitioner in jail about every six months, or approximately three times during an eighteen month period. When trial counsel visited the Petitioner, the Petitioner stated that trial counsel did not discuss the facts of the Petitioner's case or his charges and, instead, told the Petitioner, "don't worry about it." Additionally, the Petitioner stated that trial counsel told him that his juvenile charges could not be used against him. The Petitioner stated that trial counsel never confirmed that he spoke with the Petitioner's juvenile court attorney or the arresting officer. The Petitioner also stated that he asked trial counsel to file a motion to prevent the State from using the juvenile adjudications to enhance his sentence, and trial counsel's response was "I'm going to see."

The Petitioner also testified that trial counsel originally told him that he would likely be sentenced to eight to twelve years if he was found guilty at trial. However, after the State presented its notice to seek career offender status, the Petitioner stated trial counsel told him he could expect to be sentenced to thirty or sixty years after trial. The Petitioner stated that if he had been facing eight to twelve years, he would have gone to trial instead of agreeing to a guilty plea. The Petitioner additionally testified that he did not feel like trial counsel had investigated his case, he did not understand what defenses he could have argued at trial, and that he "didn't have any legal assistance about [his] case."

On cross-examination, the Petitioner stated that trial counsel discussed his charges with him on the day he pleaded guilty and that the Petitioner understood that he was pleading guilty to two counts of aggravated robbery with two concurrent sentences of twenty years. The Petitioner also stated that trial counsel discussed the plea form with him. The Petitioner admitted that, while trial counsel never discussed what the Petitioner's defense at trial might be, the Petitioner himself did not know what defense he would claim at trial. Additionally, the Petitioner admitted that he met with trial counsel several times before trial to discuss the status of his case and the plea bargains offered by the State. The Petitioner also admitted that trial counsel filed a motion to suppress a piece of evidence in his case. On redirect examination, the Petitioner stated that his six juvenile delinquency adjudications on charges of rape of a child arose out of a single incident.

Next, trial counsel testified that he has practiced as a licensed attorney in Tennessee for nineteen years and that approximately ninety percent of his practice was criminal defense. Trial counsel also stated that he had represented criminal defendants in approximately eighty to ninety jury trials. Trial counsel stated that his goal in his representation of the Petitioner was to "try to mitigate and also try to see if [he could] get

- 4 -

[the Petitioner] an in-county sentence . . . ." Trial counsel stated that he had identified several mitigating factors in the Petitioner's case, such as the Petitioner's prior record, good job, and his minimal involvement in the robberies. Trial counsel also worked to have the Petitioner's charges reduced to simple robbery, so that the Petitioner would have been facing a sentence of six years instead of eight to twelve years.

Trial counsel stated that "it got really ugly" when the State gave the Petitioner notice of the State's intent to have the Petitioner classified as a career offender based on the Petitioner's juvenile adjudications. Trial counsel also testified that the State notified the Petitioner that one of the Petitioner's co-defendants was going to testify against him. Trial counsel stated that he notified the Petitioner's mother of the State's intentions and that the State's offer had changed to "a much higher offer." Trial counsel stated that at the guilty plea hearing, he asked the trial judge for permission to "have [the Petitioner's] girlfriend and his mom and [the Petitioner and trial counsel] go back in the back to talk about the situation."

Trial counsel stated that after the State notified the Petitioner of its intent to seek career offender status, trial counsel researched the issue himself and had two other attorneys research the issue because trial counsel felt that the notice was "kind of a curve ball that [was] thrown at the last second." Both of the attorneys who researched the issue agreed with trial counsel that the State could validly use the Petitioner's juvenile adjudications to seek career offender status.

Trial counsel obtained a copy of the Petitioner's juvenile adjudications but did not speak to the juvenile attorney or the arresting officer and did not file any motions regarding the Petitioner's potential career offender status. However, trial counsel stated that he confirmed that the Petitioner had been adjudicated delinquent for the rape of a child charges. Trial counsel also testified that he asked the State to lower its offer of two twenty-year sentences but "the offer never went down." Additionally, trial counsel stated that he discussed the State's offer of two twenty-year sentences with the Petitioner. Trial counsel advised the Petitioner that if he went to trial, he could be sentenced to two thirty-year terms to be served consecutively and that "the State's case was pretty strong." Finally, trial counsel stated that the Petitioner made the ultimate decision to plead guilty.

Trial counsel also stated that he had discussed the facts of the case with the Petitioner multiple times and that they had discussed the roles played by each co-defendant in the robberies. Trial counsel confirmed that he had driven out to the scene of the crime to investigate the Petitioner's account of the crime, that he had spoken with the Petitioner about his juvenile adjudications, and that he filed a motion to suppress the show-up identification.

On cross-examination, trial counsel stated that in his research of the Petitioner's juvenile adjudications, he did not "look at dates and times of the events or anything specific about the case when [he] got the judgment . . . ." Instead, trial counsel stated he only examined the final adjudication. Additionally, trial counsel stated that if he had determined that the State could not have used the Petitioner's juvenile adjudications to enhance his sentence, trial counsel would not have advised the Petitioner to plead guilty and would have instead advised the Petitioner to go to trial.

After cross-examination, the post-conviction court asked trial counsel about the State's previous plea offer, which the Petitioner rejected. Trial counsel did not recall what the rejected offer was, but he stated that he informed the Petitioner of the offer and the Petitioner rejected the offer. After the State offered the rejected plea offer memorandum into evidence, trial counsel stated that the offer was for twenty years at Range II or 35%, which was close to the maximum that the Petitioner could have received at trial without being a career offender.

In a detailed written order, the post-conviction court denied relief. The post-conviction court noted that it "accredits the testimony of trial counsel, who said that he reviewed the juvenile materials, researched the issue, and asked two attorneys to research it as well." The post-conviction court also noted that the Petitioner had not submitted any proof that his juvenile adjudications could not have been used by the State to enhance his sentence. Additionally, the post-conviction court stated that trial counsel "cannot be faulted for not filing a pre-trial motion for the Court to determine the [P]etitioner's range since that would not be done until and only if the defendant was convicted and the Court knew what offense the conviction was for." The post-conviction court also found that trial counsel discussed the facts, charges, and the plea bargain with the Petitioner and that trial counsel had sufficiently prepared for trial by investigating the scene of the crime and discussing the crime with the Petitioner. The post-conviction court additionally found that trial counsel had filed and litigated a motion to suppress evidence in the Petitioner's case. The post-conviction court held that the Petitioner had failed to prove that trial counsel's representation was deficient or that the Petitioner had been prejudiced by trial counsel's alleged deficient representation. This timely appeal followed.

## Analysis

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012); Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

This court will review de novo the factual findings of the post-conviction court, but the lower court's factual findings are "entitled to substantial deference on appeal unless the evidence preponderates against those findings." Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). However, this court will conduct a purely de novo review of the post-conviction court's application of law to its factual findings. Id. at 457. When reviewing the trial court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." Id. at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." Id. (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)).

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Strickland, 466 U.S. 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, and Baxter, 523 S.W.2d at 936).

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In the context of a plea bargain, the petitioner must establish prejudice by showing that "but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks, 983 S.W.2d at 246 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

On appeal, the Petitioner contends that the post-conviction court erred by dismissing his petition for relief because the Petitioner proved that trial counsel's performance was deficient and that the Petitioner suffered prejudice as a result of this deficiency. Specifically, the Petitioner alleges that his trial counsel "failed to investigate or challenge the prosecution's intent to utilize the Appellant's juvenile adjudications against him, and further failed to understand the legal limits of the prosecution's potential use of the juvenile adjudications if they were brought into evidence and used against him."[2]

Failure to File Motions and Investigate Career Offender Status

First, the Petitioner contends that trial counsel's performance was deficient because trial counsel did not contest the State's intent to use the Petitioner's juvenile adjudications to seek to have the Petitioner classified as a career offender. The Petitioner argues that his six juvenile adjudications do not make him a career offender because the adjudications fall under the twenty-four hour merger rule, and therefore would be considered to be a single conviction for sentencing purposes.

The record shows that trial counsel discussed the State's Notice of Intent to Enhance with the Petitioner, researched the law himself, and had two additional attorneys research the issue. After researching the issue, trial counsel and the additional attorneys concluded that the State could validly use the Petitioner's juvenile adjudications to elevate his offender status. The post-conviction court found that trial counsel sufficiently investigated the Petitioner's alleged career offender status and that trial counsel could not have properly filed a motion contesting the State's intent to use the Petitioner's juvenile adjudications at the pre-trial stage. The evidence does not preponderate against these findings.

---

[2] In his petition for post-conviction relief, the Petitioner alleged ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. Because the Petitioner does not allege on appeal that his guilty plea was involuntary or unknowing, we will not address that issue.

Additionally, a criminal defendant has the burden of proving that his crimes were performed within a twenty-four hour period so as to fall under the merger rule. See State v. Kenneth Edward Watts, No. E2010-00553-CCA-R3-CD, 2011 WL 5517000, at *7 (Tenn. Crim. App. Nov. 8, 2011); see also Mitchell Darnell Eads v. State, No. E2012-02232-CCA-R3-PC, 2013 WL 3105613, at *3 (Tenn. Crim. App. Jun. 17, 2013) (applying the twenty-four hour merger rule in a post-conviction challenge for ineffective assistance of counsel). The Petitioner failed to present credible evidence at the post-conviction evidentiary hearing that his juvenile adjudications occurred within a twenty-four period and, thus, would not have supported a career offender classification. Therefore, the Petitioner failed to prove that he was prejudiced by any alleged deficiency in trial counsel's performance. He is not entitled to relief on this issue.

## Failure to Investigate Witnesses

Second, the Petitioner contends that trial counsel's performance was deficient because counsel did not investigate two witnesses involved in the Petitioner's juvenile adjudications. Specifically, the Petitioner argues that trial counsel should have interviewed the police officer that arrested the Petitioner on those charges and the attorney that represented the Petitioner at the adjudications. However, the Petitioner did not have either the arresting officer or his juvenile attorney testify at the post-conviction hearing. See Ernest Cunningham v. State, No. M2008-01313-CCA-R3-PC, 2009 WL 4723398, at *13 (Tenn. Crim. App. Dec. 9, 2009) ("[I]n order for a petitioner to successfully allege ineffective assistance of counsel based upon the failure to call a witness, a petitioner must be able to 'produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called.'") (quoting Black v. State, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990)). Therefore, this issue is without merit, and the Petitioner is not entitled to relief.

## Failure to Request Juvenile Adjudication Recording

The Petitioner also argues that trial counsel should have requested the recording of the adjudication proceeding from the juvenile court. Again, the Petitioner failed to produce the recording from his juvenile adjudications at his post-conviction evidentiary hearing. Instead, the Petitioner only vaguely alleged that the recording would show that he is not a career offender. See Owens v. State, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999) ("For purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of lost potential benefit."); Thomas Alvin Carter v. State, No. E2005-00625-CCA-R3-PC, 2006 WL 176545, at *27-28 (Tenn. Crim. App. Jan. 23, 2006) (holding that the petitioner had failed to prove by clear and convincing evidence that his trial counsel's failure to investigate his prior criminal record had resulted in prejudice because petitioner did not

produce the criminal record at the post-conviction hearing or for review on appeal). Therefore, the Petitioner failed to prove that he was prejudiced by any alleged deficiency, and he is not entitled to relief on this issue.

## **Conclusion**

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE